UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SPENCER PETERSON, III                    CASE NO. 1: 10-cv-01132-BAM

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

                    Plaintiff,

        vs.

STATE OF CALIFORNIA,
DEPARTMENT OF CORRECTIONS
AND REHABILITATION,

                    Defendant.
_____/

## I.    INTRODUCTION

By notice filed on March 27, 2012, Defendant State of California, Department of Corrections and Rehabilitation ("CDCR") seeks summary judgment, or in the alternative, summary adjudication pursuant to Fed. R. Civ. P. 56 on Plaintiff Spencer Peterson, III's ("Plaintiff") complaint.  (Doc. 47.) Plaintiff, in propria persona, filed an opposition to the motion on April 13, 2012.[1] (Doc. 59.)  CDCR filed a reply on April 20, 2012.  (Doc. 61.)   The Court held oral arguments on April 27, 2012.  (Doc. 64.)  Plaintiff appeared in pro se.  Counsel Michelle Littlewood and Connie Broussard appeared for Defendants.  (Doc. 64.)   Both parties have consented to the jurisdiction of the magistrate judge.

_____

[1] Plaintiff's opposition, while captioned and written as a declaration, also contains legal argument.  Accordingly, the Court receives Plaintiff's declaration as both a memorandum of points and authorities in opposition to CDCR's motion for summary judgment, as well as a declaration in support thereof.  (Doc. 59.)

1

(Doc. 4, 7.)  Having considered the moving, opposition and reply papers, the declarations[2] and exhibits attached thereto, arguments presented at the April 27, 2012 hearing, as well as the Court's file, the Court issues the following order.

## II.   BACKGROUND

### A.   Procedural Background

On May 11, 2010, Plaintiff filed a complaint in the Superior Court of California, County of Fresno, against CDCR, alleging claims of racial discrimination in violation of Title VII of the Civil Rights Act, and the Fair Employment Housing Act, Cal. Gov.'t Code § 12900 *et seq.*  (Pl.'s Compl., Doc. 1, Attach. 1, 5-7.)  Plaintiff's claims allege, *inter alia,* CDCR failed to timely promote Plaintiff - once in 2004, and again in 2009 - because he is African-American.  (Doc. 1, Attach. 1, 5-7.)

The state court action was removed to this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441(b).  (Doc. 1.)  On June 6, 2010, CDCR moved to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 5.)  The Court dismissed Plaintiff's claims relating to CDCR's failure to promote Plaintiff in 2004 as untimely, but permitted Plaintiff's claims relating to the 2009 promotion to proceed.  (Doc. 13, 6-7.)  CDCR now seeks summary judgment, or in the alternative, summary adjudication of issues relating to Plaintiff's 2009 promotion claims.

### B.   Factual Background

Plaintiff is an African-American male.  (Pl.'s Statement Undisputed Facts ("SUF"), ¶ 1, Doc. 58.)  Plaintiff was hired by CDCR on or about February 9, 1986.  (Pl.'s SUF ¶ 2, Doc. 58.)  Plaintiff was initially assigned to CDCR's Medical Facility in Vacaville, California, where Plaintiff claims to have maintained an "exemplary and spotless employment record," earning outstanding and above standard ratings.  (Pl.'s Compl., ¶ 9, Doc. 1, Attach. 1.)  On July 1, 1997, Plaintiff transferred to CDCR's Substance Abuse Treatment Facility in Corcoran, California.  (Pl.'s Compl., ¶ 10,  Doc. 1, Attach. 1.)  On October 25, 1999, CDCR promoted Plaintiff to Correctional Sergeant.  (Pl.'s Compl., ¶ 11,  Doc. 1, Attach. 1.)

---

[2]  Defendants have filed objections to several portions of Plaintiff's declaration.  (Doc. 63.)  The Court has not relied on any of the disputed portions of Plaintiff's declaration in ruling on the instant motion.  To the extent that the Court may have considered some of the disputed portions of Plaintiff's declaration, the objections are overruled.

Plaintiff alleges he began to experience racial discrimination in 2004.  (Pl.'s Compl., ¶ 8, Doc. 1, Attach. 1.)  Specifically, Plaintiff alleges CDCR failed to promote Plaintiff timely to Correctional Lieutenant in December of 2004.  (Pl.'s Decl., 3: 3-14, Doc. 59.)   Sometime thereafter, Plaintiff was promoted to Correctional Lieutenant.  (Pl.'s Decl., 3: 3-14, Doc. 59.)  In February 2006, after Plaintiff had been promoted to Correctional Lieutenant, Plaintiff filed a Title VII lawsuit against CDCR for failing to promote Plaintiff timely to Correctional Lieutenant.  (Pl.'s Decl., 3: 3-14, Doc. 59.)

In April of 2009, Plaintiff interviewed for a promotion to Correctional Captain.  (Pl.'s SUF ¶ 16, Doc. 58.)  The Correctional Captain position was for Solano's Central Services Unit.  (Pl.'s SUF ¶ 16, Doc. 58.)  The interviews were conducted to promote someone to the rank of Captain in order to fill the vacancy in the Central Services Unit.  On or about May 1, 2009, CDCR lateraled an individual into the Central Services Captain position who was not African-American, had not participated in the interviews and, Plaintiff alleges, was less qualified than Plaintiff for Central Services position.  (Pl.'s Decl., 3-4, Doc. 59.)  Shortly thereafter, on June 2, 2009, Plaintiff was promoted and approved for a limited term appointment to Correctional Captain for the Health Care Services Unit.[3]  (CDCR's SUF, ¶¶ 28-9, Doc. 50.)   On January 1, 2010, Plaintiff was promoted to a permanent civil service position as Correctional Captain in the Health Care Services Unit.  (CDCR's SUF, ¶ 32, Doc. 50.)  Plaintiff, however, claims damages as a result of the delay in receiving the promotion, which Plaintiff believes was motived by Plaintiff's race, as well as a retaliation for Plaintiff's 2006 lawsuit against CDCR.

## C.   Correctional Captain Position, Central Services Unit

On or about February 1, 2009, Solano Central Services Unit Correctional Captain Milford B. Miles announced his intention to retire effective March 28, 2009.  (CDCR's SUF ¶ 3, Doc. 50.)  This created a vacant Correctional Captain position in the Central Services Unit.  (CDCR's SUF ¶ 3, Doc. 50.)  Upon learning this information, Personnel Officer Miriam Galarza began to advertise the vacant Correctional Captain position.  (CDCR's SUF ¶ 3, Doc. 50.)

---

[3]  The Correctional Captain position in the Health Care Services Unit was equal in rank and pay to the Correctional Captain position in Central Services.  (CDCR's SUF, ¶ 31, Doc. 50.)

1          **1.      Correctional Captain Position Filled By Captain Young**

2          In February of 2009, Captain Kimberlyn M. Young ("Captain Young"), then working as

3   Acting Associate Warden[4] at CDCR headquarters in Sacramento, informed her supervisor, Terri

4   McDonald, that she wished to be transferred due to an on-going personal conflict. (CDCR's SUF ¶ 4,

5   Doc. 50.)  It is common practice for CDCR to transfer employees to different institutions or positions

6   for a variety of reasons, including the need to avoid existing or potential conflicts.[5]  (Subia Decl., ¶¶

7   6-8, Doc. 49; Galarza Decl., ¶ 5, Doc. 53.)  In or around February 2009, Captain Young discussed

8   her transfer request with Richard Subia, the Associate Director of the CDCR.[6]   (CDCR's SUF ¶ 4,

9   Doc. 50.)

10         In or around April of 2009, Mr. Subia contacted the warden of Solano State Prison, John

11  Haviland, and inquired if there were any vacant Correctional Captain positions.[7]  (Declaration of

12  John Haviland ("Haviland Decl.") ¶ 5, Doc. 54.)  Warden Haviland informed Mr. Subia of the

13  Correctional Captain vacancy created by Captain Miles impending departure, and Mr. Subia

14  informed Warden Haviland that Captain Young would be transferred to the vacant Correctional

15  Captain position.  (CDCR's SUF ¶ 6, Doc. 50.)  Captain Young was not required to interview for the

16  vacant position because Captain Young was a Captain at the time of the transfer.  (CDCR's SUF ¶

17  22, Doc. 50.)  The decision to transfer Captain Young was unilaterally made by Mr. Subia, without

18  the involvement of individuals at Solano. (Declaration of Richard Subia ("Subia Decl.") ¶ 6, Doc.

19  49.)

20

21  ───────────────

22         [4] At the time Captain Young was employed as Acting Associate Warden at CDCR headquarters, she was classified as a Facility Captain in the Female Offenders Program.  ( Pl.'s SUF, ex. 11, Doc. 58.)

23         [5] While Plaintiff disputes the fact that personnel laterally transfer, Plaintiff does not present evidence on this point.

24         [6] As Associate Director of CDCR, Mr. Subia's responsibilities and related authority permitted him to make personnel decisions unilaterally. (Subia Decl. ¶ 6, Doc. 49.)

25

26         [7] CDCR's evidence is conflicted on the dates of inquiries.  Captain Young testifies in her declaration that Mr. Subia informed her on or about February 19, 2009, that she would be transferred to the Correctional Captain vacancy at Solano. (Young Decl., ¶¶ 5- 6, Doc. 51.)  Warden Haviland, on the other hand, states he did not receive any inquiry from Mr. Subia
27  until April of 2009.  (Haviland Decl., ¶ 5, Doc. 54.)  Ultimately, this distinction makes no difference in the Court's analysis as it is undisputed that Captain Young was lateraled into the Central Services position by the time the interviews took place.
28  (CDCR's SUF, ¶ 23, Doc. 50.)

**2.     Plaintiff's Interview for the Correctional Captain Position**

On April 16, 2009, and April 21, 2009, Solano conducted interviews for the vacant Correctional Captain position in the Central Unit.  (Pl.'s SUF ¶ 8, Doc. 58.)  The interviews were conducted around the same time that Warden Haviland was informed Captain Young would be transferred to fill the Correctional Captain position in the Central Unit.  (Pl.'s SUF ¶ 8, Doc. 58.)  The interviews also took place around the same time Warden Haviland was officially notified that an additional Correctional Captain position would be created for the Health Care Services Unit.  (Haviland Decl., ¶ 5, Doc. 54.)  By the time Plaintiff interviewed for the Correctional Captain position in the Central Unit, however, Captain Young had already received approval to transfer to the Central Unit position.  (SUF ¶ 17, Doc. 50.)

Four people were interviewed for the Correctional Captain position in the Central Unit.  (SUF ¶ 16, Doc. 50.)  Of the four candidates, three were African-American, and one was Caucasian.  (SUF ¶ 16, Doc. 50.)  The interview panel for the Correctional Captain position consisted of two individuals: an African-American woman and a Hispanic man.  (CDCR's SUF ¶ 18, Doc. 50.)  Following the interviews, Plaintiff was selected as the most qualified candidate.  (CDCR's SUF ¶ 19, Doc. 50.)  Plaintiff was not offered a position immediately following the interviews because there was no vacant Correctional Captain position available at Solano, as Captain Young had already filled the position.  (CDCR's SUF, ¶ 23, Doc. 50.)

**D.     Correctional Captain Position, Health Care Services**

In late 2008, Solano was part of a state wide audit of prisoner health care services.  (SUF ¶ 10, Doc. 50.)  As a result of that audit, the Undersecretary of Corrections' Office informed Warden Haviland that Solano would be approved for additional custody positions in the Health Care Services Unit.  (SUF ¶ 10, Doc. 50.)  Additionally, it was anticipated that a Correctional Captain would be appointed to supervise the custody staff.  (SUF ¶ 10, Doc. 50.)  The decision to add additional staff at Solano, however, was not official at this time.

In or around March 2009, Warden Haviland received notification from the Undersecretary's Office that the additional positions, including the Correctional Captain position, would be created in Solano.  (SUF ¶ 11, Doc. 50.)  Due to the California budget crisis, however, Solano was not given a

specific date as to when the positions could be filled.  (SUF ¶ 11, Doc. 50.)  In or around May 19, 2009, Warden Haviland received additional reassurances the Health Care Unit Correctional Captain position would be approved.  (SUF ¶ 25, Doc. 50.)  At this time, Solano created a limited term appointment to Correctional Captain for Health Care Services Unit, pending official approval for a permanent position.  (SUF ¶ 30, Doc. 50.)

In May of 2009, when Associate Warden Scavetta and Warden Haviland were informed that the new Correctional Captain position in the Health Care Services Unit would be approved, Associate Warden Scavetta sent Warden Haviland a memorandum requesting exemption from advertising for the Correctional Captain position in Health Care Services. (CDCR's SUF, ¶ 25-6, Doc. 50.)   It was determined that the April 2009 interviews - which Plaintiff was selected as the best candidate for a Correctional Captain position - could be used for the newly created Health Care Services position.  (CDCR's SUF, ¶ 25-6, Doc. 50.)  On May 27, 2009, Warden Haviland approved the request to appoint Plaintiff to the newly created Correctional Captain position.   (CDCR's SUF, ¶ 28, Doc. 50.)

On June 2, 2009, Warden Haviland sent Mr. Subia a request to approve the appointment of Plaintiff to the Captain position for the Health Services Unit.  (CDCR's SUF, ¶ 29, Doc. 50.)   Mr. Subia approved the limited term appointment of Plaintiff to the Health Care Services position. (CDCR's SUF, ¶ 30, Doc. 50.)  The appointment, at the time, was for a limited term due to budget concerns.  (CDCR's SUF, ¶ 30, Doc. 50.)  On January 1, 2010, Mr. Subia approved Plaintiff's appointment to a permanent civil service position as a Correctional Captain in the Health Care Services Unit.  (CDCR's SUF, ¶ 32, Doc. 50.)

**E.      Plaintiff's Claims**

Based on the above circumstances, Plaintiff alleges CDCR's failure to promote Plaintiff to the Central Services Correctional Captain position in April 2009 violated Plaintiff's rights under Title VII and FEHA.  Specifically, Plaintiff alleges CDCR refused to promote Plaintiff to the Central Services position on the basis of Plaintiff's race, and to retaliate against Plaintiff for his previous 2006 lawsuit against CDCR.

6

## III.   DISCUSSION

**A.      Summary Judgment/Adjudication Standards**

Fed. R. Civ. P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim."  Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law.  F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985). On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970).

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102.  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.  "If, however, a moving party carries its burden of production, the nonmoving party must

1    produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103.  "If the

2    nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the

3    moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*

4    *Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of

5    summary judgment, after adequate time for discovery and upon motion, against a party who fails to

6    make the showing sufficient to establish the existence of an element essential to that party's case,

7    and on which that party will bear the burden of proof at trial.")

8    **B.      Plaintiff's Title VII and FEHA Claims for Racial Discrimination**

9          Plaintiff alleges discrimination on the basis of race in violation of Title VII and FEHA.  The

10   same legal principles apply to claims under Title VII and FEHA.  *See Lew v. Superior Court of Cal.,*

11   348 Fed. Appx. 227 (9th Cir. 2009); *Metoyer v. Chassman,* 504 F.3d 919, 941 (9th Cir. 2007);

12   *Jenkins v, MCI Telecomm. Corp.,* 973 F. Supp. 1133, fn. 5 (C.D. Cal. 1997) ("Because the statutory

13   provisions of Title VII and the FEHA possess identical objectives and public policy considerations,

14   California courts refer to federal decisions when interpreting analogous provisions of the FEHA").

15   Therefore, the Title VII and FEHA claims will be referred to by reference to the Title VII claims.

16         Title VII makes it "an unlawful employment practice for an employer ... to discriminate

17   against any individual with respect to his compensation, terms, conditions, or privileges of

18   employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §

19   2000e-2(a)(1); *see also* Cal. Gov't Code § 12940(a) ("It is an unlawful employment practice . . . [f]or

20   an employer, because of the race . . . of any person . . . to discriminate against the person in

21   compensation or in terms, conditions, or privileges of employment.")  A plaintiff may show violation

22   of Title VII by proving disparate treatment or disparate impact, or by proving the existence of a

23   hostile work environment.  *Sischo-Nownejah v. Merced Community College Dist.*, 934 F.2d 1104,

24   1109 (9th Cir. 1991).

25         A plaintiff may establish a prima facie case of discrimination by introducing evidence that

26   "give[s] rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs v.*

27   *Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094 (1981); *Sischo-Nownejah*, 934 F.2d at 1109.  The

28   evidence may be either direct or circumstantial, and the amount that must be produced to create a

prima facie case is "very little." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *Sischo-Nownejah*, 934 F.2d at 1110-1111.

A plaintiffs' Title VII claim is analyzed through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination.  *Hawn v. Executive Jet Management, Inc.,* 615 F.3d 1151, 1155 (9th Cir. 2010).  If plaintiff establishes a prima facie case, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.*  If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination. *Id.* at 1155-56.  The employer's proof of legitimate, nondiscriminatory reasons for its action dispels the inference of discrimination raised by plaintiff's prima facie case. The *McDonnell Douglas* framework "disappears," leaving plaintiff with the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff.  *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 142, 120 S.Ct. 2097, 2106 (2000).

**1.    Plaintiff's Burden to Establish A Prima Facie Case**

A plaintiff can make out a prima facie case for failure to promote under Title VII by showing: (1) he is a member of a protected class[8], (2) he was qualified for the position and performing his job satisfactorily[9], (3) he suffered an adverse employment action, (4) the action occurred in circumstances suggesting discriminatory motive. *McDonnell Douglas Corp.*, 411 U.S. 792, 802, 93 S.Ct. at 1824.  The first two elements are satisfied by the undisputed evidence.  The Court turns to the remaining elements of the prima facie case.

---

[8] Plaintiff alleges that, as an African-American, Plaintiff is a member of a protected class.  CDCR does not dispute this contention.

[9] Plaintiff alleges that he was qualified for the position of Correctional Captain and continuously performed his previous positions with CDCR satisfactorily.  CDCR does not dispute this contention.

1              **i.      Adverse Employment Action**

2         Adverse employment action is defined broadly. *Fonseca v. Sysco Food Services of Arizona,*

3    *Inc.*, 374 F.3d 840 (9th Cir. 2004).  A denial or delay of promotion is generally deemed adverse

4    employment action.  *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) ("Transfers of job

5    duties and undeserved performance ratings, if proven, would constitute 'adverse employment

6    decisions....' "); *St. John v. Employment Development Dept.*, 642 F.2d 273, 274 (9th Cir.1981) (a

7    transfer to another job of the same pay and status may constitute an adverse employment action.);

8    *Ricci v. DeStefano*, 557 U.S. 557, 129 S.Ct. 2658, 2671 (2009) (finding for plaintiffs who "were

9    denied a chance at promotions"); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) ("It is

10   ... well established ... that the denial of a promotion is an actionable adverse employment action.")

11   (emphasis omitted).

12        CDCR argues that Plaintiff has not suffered any adverse employment action because

13   Plaintiff, after applying for a Correctional Captain position, received the only available Correctional

14   Captain position.  In other words, CDCR suggests that while Plaintiff interviewed for the Central

15   Services position, because that position was filled by the time Plaintiff interviewed, Plaintiff

16   received the only position available subsequent to Plaintiff's interview, i.e., the Health Services

17   position.  Plaintiff responds that, at the time he interviewed for the Correctional Captain position, he

18   was applying for the Central Services position.  Although Plaintiff subsequently was promoted to the

19   rank of Correctional Captain of the Health Services unit, if Plaintiff had received the Central

20   Services position, Plaintiff would have been promoted to the rank of captain sooner.  This delay in

21   Plaintiff's promotion to Captain, Plaintiff argues, caused him injury, and constitutes adverse

22   employment action.

23        A denied promotion, even if only temporarily, represents an adverse employment action.  *See*

24   *Breiner v. Nevada Dept. Of Correcitons,* 610 F.3d 1202 (9th Cir. 2010).  The delay in Plaintiff's

25   promotion to Captain resulted in a delay in Plaintiff's pay increase, as well as a delay in any other

26   benefits, tangible or perceived, associated with a promotion in rank.  This adverse result to Plaintiff's

27   employment status is not altered by the fact that the position had been filled by Captain Young by the

28   time Plaintiff interviewed for the same position.  Put simply, Plaintiff applied and interviewed for a

1    specific promotion, and did not receive it.  In circumstances such as these[10], it is "beyond dispute that

2    the denial of a single promotion opportunity such as the one here at issue is actionable under Title

3    VII."  *See Breiner v. Nevada Dept. Of Correcitons*, 610 F.3d 1202 (9th Cir. 2010).

4                      **ii.    Conditions Suggesting Discriminatory Motive**

5                An adverse employment decision is viewed as having occurred under circumstances

6    suggesting a discriminatory motive when persons outside the protected class with equal or lesser

7    qualifications were given more favorable treatment.  *McDonnell Douglas, 411 U.S. at 792, 802, 93*

8    *S.Ct. 1817, 36 L.Ed.2d 668.*  However, an employee's subjective personal judgments of her

9    competence, or the competence of the individual alleged to have received favorable treatment, alone

10   do not raise a genuine issue of material fact. *Schuler v. Chronicle Broadcasting Co., Inc*., 793 F.2d

11   1010, 1011 (9th Cir.1986).   Moreover, it is insufficient for Plaintiff to merely allege that a member

12   of a different race was granted the opportunity denied to Plaintiff.  *Rose v. Wells Fargo & Co.*, 902

13   F.2d 1417, 1421 (9th Cir.1990).  Rather, Plaintiff  must show that the adverse employment action

14   "occurred under circumstances giving rise to an inference of discrimination.*"  Rose v. Wells Fargo*

15   *& Co.*, 902 F.2d 1417, 1421 (9th Cir.1990).

16               CDCR argues Plaintiff can not demonstrate circumstances suggesting a discriminatory

17   motive because the undisputed evidence shows that the decision makers at Solano wanted to

18   promote Plaintiff, but could not because Associate Director Subia, who was unaware of Plaintiff's

19   race and unaware Plaintiff had applied for the Correctional Captain position, unilaterally decided to

20   transfer Captain Young.  CDCR also argues that because Mr. Subia was the individual responsible

21   for both the refusal to promote Plaintiff to the Central Services position, as well as the decision to

22   promote Plaintiff to the Health Services position, a strong inference arises that the adverse action,

23   i.e., the refusal to promote to the Central Services position, was not taken with discriminatory

24

25          [10]  At oral argument, Plaintiff also argued the Central Services position was a more favorable position to that of the
     Health Services position. Plaintiff argued that because the Central Services position was within the organizational structure

26   of Solano, whereas the Health Services position was offered through the broader CDCR operation, there was less prestige
     attached to the Health Services position.  A less prestigious position, or a difference in responsibilities that would be

27   materially adverse to a reasonable employee can constitute adverse employment action. *See, Burlington Northern & Santa
     Fe Ry. Co. v. White*, 548 U.S. 53, 71, 126 S. Ct. 2405, 2417 (2006). Accordingly, the Court finds that Plaintiff has carried

28   his burden to show an adverse employment decision.

1  intentions.

2      Plaintiff argues discriminatory circumstances are present for the following reasons: (1)

3  Captain Young was less qualified than Plaintiff for the Correctional Captain position; (2) Captain

4  Young had not applied, requested for lateral, or interviewed for the Central Services position; and (3)

5  CDCR's lateral placement of Captain Young violated CDCR policies relating to hiring practices.

6      The evidence before the Court, even considering the minimal showing required of Plaintiff

7  to articulate a prima facie claim, does not demonstrate circumstances suggesting a discriminatory

8  motive.  It is undisputed the individual responsible for laterally transferring Captain Young, Mr.

9  Subia, was unaware Plaintiff had applied for the Central Services position.  It is also undisputed that

10 Mr. Subia was unaware of Plaintiff's race.  *See,* Subia Decl., ¶ 8 ("At the time I instructed Mr.

11 Haviland to appoint Ms. Young to the vacant position, I did not know of CDCR employee Spencer

12 Peterson III. . . I was also not aware of Mr. Peterson's race.  In addition, I did not know whether the

13 institution [Solano] had advertised or interviewed for a Correctional Captain position when I spoke

14 with Mr. Haviland. Whether an advertisement had been posted, or interviews conducted, was

15 irrelevant to my decision to transfer Ms. Young.") Plaintiff has not offered any evidence that Mr.

16 Subia was aware Plaintiff had applied for the position, was selected for the position during the April

17 2009 interviews, or had knowledge that Plaintiff was African-American.  Mr. Subia had full and

18 final authority to transfer Captain Young to the Central Services position.

19     The undisputed evidence shows that the individuals responsible for screening applicants for

20 the Central Services position recommended Plaintiff for the position.  (SUF ¶ 19, Doc. 50.)

21 Ultimately, these individuals had no say in the final decision because Mr. Subia unilaterally

22 transferred Captain Young to the Central Services position.  (Subia Decl., ¶ 6, Doc. 49) ("I informed

23 Mr. Haviland that Ms. Young would be placed in the open position.  I made this decision at CDCR

24 Headquarters and it was not a decision made at the institutional level."); (Haviland Decl., ¶ 5-7, Doc.

25 54) (". . . Mr. Subia informed me that he was going to transfer Correctional Captain Kimberlyn

26 Young in the vacant [Central Services] position. . . The decision to transfer Captain Young was

27 made at headquarters.")  Plaintiff has not offered any evidence indicating that the individuals who

28 knew Plaintiff had applied for the position were in any way responsible for the decision to transfer

1   Captain Young laterally to the Central Services position.  Thus, the final decision to fill the Central

2   Services position was not made by the interview committee.

3       Plaintiff's arguments to the contrary fail create a plausible inference of discriminatory

4   circumstances.  For instance, Plaintiff states in his declaration that Captain Young was less qualified

5   for the position of Correctional Captain.  Plaintiff, however, does not offer any evidence to support

6   this assertion, other than his declaration stating his personal opinion of Captain Young's

7   qualifications.  Plaintiff's personal beliefs regarding Captain Young's qualifications, without more,

8   are insufficient to meet the prima facia burden.  *See Schuler v. Chronicle Broadcasting Co., Inc.*, 793

9   F.2d 1010, 1011 (9th Cir.1986) ("Plaintiff denies the credibility of this evidence and says repeatedly

10  that she "felt" competent and was "confident of [her] skills." These subjective personal judgments do

11  not raise a genuine issue of material fact.")  Moreover, the Central Services position was reserved for

12  someone holding the rank of captain.  Captain Young was, in fact, a captain.  Plaintiff, on the other

13  hand, sought to be promoted to the rank of captain, and held the rank of lieutenant when the Central

14  Services position was filled.

15      Plaintiff's argument, that Captain Young's failure to interview for the position creates

16  circumstances indicating a discriminatory motive, does not create an issue of fact.  The evidence

17  before the Court demonstrates that, because Captain Young already held the rank of captain, it was

18  unnecessary for her to interview for a promotion to a rank she already held.  (Subia Decl., ¶ 7, Doc.

19  49) ("Ms. Young was classified as a Correctional Captain at the time of her request.  Accordingly,

20  moving her from CDCR Headquarters to Solano was a lateral transfer.  It was not necessary for Ms.

21  Young to interview for the position based on her current classification."); (Haviland Decl., ¶ 5, Doc.

22  54) ("Prior to her transfer, Ms. Young was already classified as a Correctional Captain and had

23  passed her probationary period in that position.  As such, it was not necessary for Captain Young to

24  interview for the position."); (Galarza Decl., ¶ 5; Doc. 52) ("It was not necessary for Captain Young

25  to interview for the Correctional Captain position because Captain Young was already classified as a

26  Captain prior to her lateral transfer.")

27      At oral argument, Plaintiff argued that CDCR's policies required Solano to fill the Central

28  Services position from an applicant who participated in the interview process.  (Pl.'s SUF, Ex. 20,

13

Doc. 58) ("The hiring authority may chose the panel's recommended applicant or select another applicant from the interview process.") However, CDCR's written policies also provide an exemption for the "hiring authority," under certain circumstances, to forgo the recruiting process and appoint an individual who had not interviewed for that specific position. (Pl.'s SUF, Ex. 19, 20, Doc. 58.)  As Associate Director of CDCR, Mr. Subia, the individual responsible for Captain Young's lateral placement, is within the "hiring authority" contemplated by the CDCR employment guidelines.  (Pl.'s SUF, Ex. 19, 20, Doc. 58.)

Indeed, when Plaintiff was promoted to the Health Services position, there were no interviews or formal recruiting processes.  (Def.'s SUF, 25-29, Doc. 50.)  Rather, this exemption afforded Mr. Subia - the "hiring authority" - the opportunity to promote Plaintiff to his current position.  *Id.*  Moreover, the evidence provided by Plaintiff does not address lateral transfers, and how lateral placements operate within the recruiting process.  The evidence before the Court demonstrates that lateral placements of employees may be authorized, regardless of whether other candidates had interviewed for a promotion to that position. There is no evidence to indicate the lateral transfer of Captain Young was unauthorized under the undisputed circumstances described herein.

Plaintiff also states Captain Young never requested to lateral into the Central Services position.  This argument, however, does not have any evidentiary support.  On the contrary, the undisputed evidence shows Captain Young requested the transfer due to a personal conflict.  (Young Decl., ¶ 4, Doc. 51) ("I informed Mr. Subia that I was no longer able to work with the other CDCR employee and I requested to return to Solano or another institution."); (Subia Decl., ¶ 4, Doc. 49) ("I learned from then Chief Deputy Secretary, Terri McDonald, that Ms. Young wanted to leave headquarters and be placed at an institution.")

Accordingly, there is no evidence, circumstantial or direct, allowing for the inference that Plaintiff's race was a factor in the denial of the Central Services promotion.

        a.       **The Same Actor Rule Requires An Extraordinarily Strong Showing of Discrimination that Plaintiff Can Not Meet**

Plaintiff has failed to demonstrate the adverse employment action "occurred under

circumstances giving rise to an inference of discrimination.*" Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir.1990).  Even assuming, however, Plaintiff had met his prima facie burden, Plaintiff would be required to make the heightened showing of discrimination required under the "Same Actor Rule."  In *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267 (9th Cir.1996), the Ninth Circuit held that "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." *Id*. at 270-71.  Although *Bradley* phrased the same-actor rule in terms of "hiring and firing," its logic applies to cases such as this one, for successive promotion opportunities. *See Coghlan v. American Seafoods Co., LLC,* 413 F.3d 1090, 1096 (9th Cir. 2005) ("it is irrational to infer discriminatory animus by a decision-maker in taking an adverse employment action against an employee when that decision-maker previously hired or otherwise favored the employee."); *Hartsel v. Keys,* 87 F.3d 795, 804 n. 9 (6th Cir.1996) (applying the same-actor inference where the decision maker had not hired the plaintiff but had previously promoted her).  When the same actor rule applies, a plaintiff must present an "extraordinarily strong showing of discrimination" in order to overcome the rule and defeat summary judgment." *See Coghlan v. American Seafoods Co., LLC,* 413 F.3d 1090, 1096 (9th Cir. 2005); . *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267 (9th Cir.1996) (when the same actor is responsible for both the adverse act, as well as the favorable act, a strong inference arises that the adverse action was not taken with discriminatory intentions.)

Here, Mr. Subia was the final decision maker.  Mr. Subia was responsible for the decision to transfer Captain Young to the Central Services position, and Mr. Subia's approval was required for Plaintiff's promotion to the Health Care Services position.  Plaintiff was promoted to the rank of captain less than three months after Plaintiff interviewed for a promotion to the rank of captain. (Subia Decl., ¶ 8.)  Under these circumstances, the same-actor rule must apply.  The evidence before the Court not only fails to meet the heightened requirements under the same- actor doctrine, but indeed, Plaintiff's evidence does not demonstrate discriminatory circumstances under the lesser prima facie standards.  Plaintiff has not offered any evidence suggesting Mr. Subia's decision to laterally transfer Captain Young was motivated by Plaintiff's race.

1

2        **2.      Articulated Legitimate Nondiscriminatory Reason**

3        Based on the foregoing, Plaintiff's Title VII and FEHA claims for racial discrimination must

4   fail.  Assuming, however, Plaintiff had established a prima facie case of employment discrimination,

5   the burden would then shift to CDCR to articulate a legitimate, non-discriminatory reason for its

6   employment decision.  *Noyes v. Kelly Servs.,* 488 F.3d 1163, 1168 (9th Cir. 2007).  CDCR argues it

7   has articulated a non-discriminatory reason for its employment decision, namely, Mr. Subia's

8   unilateral decision to transfer Captain Young.  Plaintiff does not dispute CDCR has offered a

9   legitimate, non-discriminatory reason for its employment decision.  Indeed, Plaintiff acknowledges

10  that Captain Young "got into a verbal confrontation with someone in headquarters that prompted

11  them [CDCR] to place her in a correctional captain's position." (Peterson Depo., 101: 20 - 102: 10,

12  Doc. 55.)  The evidence before the Court demonstrates that lateral transition of CDCR employees is

13  common practice.  (Subia Decl., ¶¶ 6-8; Haviland Decl., ¶  5; Galarza Decl., ¶ 5.)  Accordingly,

14  CDCR has met its burden of articulating a nondiscriminatory reason for its employment decision.

15       **3.      Plaintiffs' Argument of Pretext**

16       CDCR has rebutted the presumption of discrimination by articulating a legitimate, non-

17  discriminatory reason for its employment decision.  As such, the burden shifts back to Plaintiff to

18  establish that CDCR's stated reasons for the adverse employment action was pretext for unlawful

19  discrimination. *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996).  A plaintiff

20  may defeat summary judgment by offering direct or circumstantial evidence "that a discriminatory

21  reason more likely motivated the employer," or "that the employer's proffered explanation is

22  'unworthy of credence' because it is internally inconsistent or otherwise not believable." *Anthoine v.*

23  *North Central Counties Consortium*, 605 F.3d 740, 753 (9th Cir.2010) (quotation and citation

24  omitted). That is, Plaintiff must offer evidence that CDCR's stated reasons for the alleged adverse

25  action was untrue or pretextual, or evidence that CDCR acted with a discriminatory animus, or a

26  combination of the two, such that a reasonable trier of fact could conclude that CDCR engaged in

27  intentional discrimination. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir.1998).

28       Direct evidence includes "clearly sexist, racist, or similarly discriminatory statements or

1   actions by the employer." *Coghlan v. Am. Seafoods Co.,* 413 F.3d 1090, 1095 (9th Cir. 2005).  By

2   contrast, circumstantial evidence is evidence "that tends to show that the employer's proffered

3   motives were not the actual motives because they are inconsistent or otherwise not believable."

4   *Godwin*, 150 F.3d at 1222.  "These two approaches are not exclusive; a combination of the two kinds

5   of evidence may in some cases serve to establish pretext so as to make summary judgment

6   improper." *Anthoine,* 605 F.3d at 753 (quotation and citation omitted).  However, "[a] plaintiff may

7   not defeat a defendant's motion for summary judgment merely by denying the credibility of the

8   defendant's proffered reason for the challenged employment action." *Cornwell v. Electra Cent.*

9   *Credit Union*, 439 F.3d 1018, 1028 n. 6 (9th Cir.2006). "When the evidence on which a plaintiff

10  relies is circumstantial, that evidence must be specific and substantial to defeat the employer's

11  motion for summary judgment." *Anthoine,* 605 F.3d at 753 (quotation and citations omitted).

12          Plaintiff has failed to meet his burden to demonstrate CDCR's stated rationale for its

13  employment decision; i.e., laterally transferring Captain Young, was pretext for its refusal to

14  promote Plaintiff on the basis of race.  For the same reasons discussed above, the evidence proffered

15  by Plaintiff fails to demonstrate CDCR's employment decision took place under arguably

16  discriminatory circumstances.  *See,* Supra, Section III.B.1.ii.

17          Plaintiff has not offered any direct evidence or statements indicating racial animus.

18  Moreover, Plaintiff has failed to offer any circumstantial evidence indicating racial discrimination.

19  Indeed, Plaintiff has acknowledged the sole basis for his discrimination claims is that Captain Young

20  was placed in the position without going through the interview process.  (Peterson Depo., 76: 13-20,

21  Doc. 55.) (Q: "And what facts are you basing your claim that headquarters discriminated against

22  you?" A: "By the fact that Kim Young was placed in the position."  Q: "What about the fact that she

23  was placed in the position makes you think that it was discrimination that placed her there as

24  opposed to some other reason?"  A: "She didn't go through the interview process.")  Captain

25  Young's lateral placement into the Central Services position, however, does not raise a disputed

26  issue as to pretext.  The undisputed evidence demonstrates that Captain Young was not required to

27  interview for the position because, as a captain, she was not seeking a promotion. The undisputed

28  evidence also shows that Captain Young was placed in the Captain position before Plaintiff's

interviewed for a promotion to the rank of captain.  Moreover, the undisputed evidence demonstrates that lateral transfer of employees is common practice.  Plaintiff does not offer any other argument or evidence that the lateral transfer of Captain Young was pretext for CDCR's true motivation of racial discrimination.

Plaintiff has failed to establish, directly or indirectly, that CDCR's articulated reason for denying Plaintiff the Central Services promotion was pretext for racial discrimination.  Accordingly, Plaintiff's Title VII and FEHA claims for racial discrimination must fail.

**E.  Plaintiff's Retaliation Claims Under Title VII and the FEHA**

On February 27, 2006, Plaintiff filed a Title VII discrimination complaint against CDCR for CDCR's failure to promote Plaintiff to Correctional Lieutenant (the "Correctional Lieutenant Lawsuit").  Plaintiff alleges CDCR's refusal to promote Plaintiff to the Central Services position was a retaliation against Plaintiff for the 2006 racial discrimination lawsuit.  On May 5, 2010, Plaintiff voluntarily dismissed the Correctional Lieutenant Lawsuit.

**1.      Legal Standard for Retaliation Claims**

The legal standard for a retaliation claim is the same under Title VII and the FEHA.  *Surrel v. California Water Serv. Co.*, 518 F.3d 1097, 1107 (9th Cir. 2008) (applying *McDonnell Douglas* to Title VII and § 1981 claims); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000) (because of similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying state statutes).

To establish a prima facie case of retaliation under Title VII, "[t]he plaintiff must show (1) that she was engaging in a protected activity[11], (2) that she suffered an adverse employment decision[12], and (3) that there was a causal link between the protected activity and the adverse employment decision." *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1514 (9th Cir.1989); *see Flait v. N. Am. Watch Corp.*, 3 Cal.App.4th 467, 476, 4 Cal.Rptr.2d 522 (1992)).

---

[11] CDCR does not dispute that Plaintiff's previous lawsuit for racial discrimination constitutes "engaging in protected activity."

[12] CDCR argues Plaintiff has not suffered an adverse employment decision.  However, for the same reasons discussed above, Supra Section III.B.1.i, the Court finds Plaintiff has suffered an adverse employment decision.

Under the burden-shifting scheme of Title VII and the FEHA, after the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse employment action. *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001).   If the employer rebuts the inference of retaliation, the burden of production shifts back to the plaintiff to show that the defendant's explanation is merely a pretext for impermissible retaliation. *Winarto,* 274 F.3d at 1284. Pretext may be shown either (1) directly by persuading the jury that a discriminatory motive more likely than not motivated the employer or (2) indirectly by showing that the employer's proffered explanation is unworthy of credence. *Winarto,* 274 F.3d at 1284.  To establish pretext, "very little" direct evidence of discriminatory motive is sufficient, but if circumstantial evidence is offered, such evidence has to be "specific" and "substantial." *Id.*

### 2. Causal Link Between the Protected Activity and the Adverse Employment Decision

"To establish causation, the plaintiff must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the adverse employment decision and that but for such activity the decision would not have been made." *Kraus v. Presidio Trust Facilities Division/Residential Management Branch*, 704 F.Supp.2d 859 (N.D. Cal. 2010) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)).  Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the alleged retaliatory employment decision. *Yartzoff v. Thomas,* 809 F.2d 1371 (9th Cir. 1987), citing *Miller*, 797 F.2d at 731-32.  In some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity. *See Passantino v. Johnson & Johnson Consumer Prods., Inc*., 212 F.3d 493, 507 (9th Cir. 2000) (noting that causation can be inferred from timing alone); *Miller v. Fairchild Indus*., 885 F.2d 498, 505 (9th Cir.1989) (prima facie case of causation was established when discharges occurred forty-two and fifty-nine days after EEOC hearings).  But timing alone will not show causation in all cases; rather, "in order to support an inference of retaliatory motive, the termination must have

occurred 'fairly soon after the employee's protected expression.' " *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009-10 (7th Cir.2000).

Plaintiff has failed to establish his prima facie case. Specifically, Plaintiff has not demonstrated causation. Plaintiff has failed to show a causal link between the Correctional Lieutenant Lawsuit and his failure to be promoted in April of 2009. The uncontroverted evidence shows that Mr. Subia, the individual solely responsible for Plaintiff's adverse employment decision, had no knowledge of Plaintiff's previous 2006 lawsuit at the time he transferred Captain Young. (Subia Decl. ¶ 8.) Plaintiff, while stating his subjective belief that Mr. Subia was aware of the previous lawsuit, has not presented any evidence to support such a belief.

The only circumstantial evidence Plaintiff offers to support his claims for retaliation is the assertion that the failure to promote followed his previous lawsuit for racial discrimination. The Correctional Lieutenant Lawsuit was ongoing until May of 2010. Accordingly, the "adverse act," i.e., CDCR's failure to promote Plaintiff to the Central Services position, occurred *during* the protected activity Plaintiff undertook, which Plaintiff now claims to be the basis for CDCR's retaliation. CDCR, however, also promoted Plaintiff to the rank of captain - temporarily in June of 2009, and permanently in January of 2010 - during the pendency of the Correctional Lieutenant Lawsuit. Plaintiff's argument that CDCR refused to promote Plaintiff to captain in retaliation for the Correctional Lieutenant Lawsuit, when CDCR promoted Plaintiff to captain shortly after the initial refusal, while the Correctional Lieutenant Lawsuit was still pending, is insufficient to create the required causal link between the adverse employment decision and the protected activity.

Accordingly, Plaintiff has failed to demonstrate a prima facie case for Title VII retaliation.[13]

*/.///*

---

[13]   Even assuming Plaintiff could demonstrate a prima facie case for Retaliation, Plaintiff's claims of pretext fail for the same reasons discussed above. *See,* Supra Section III.B.1.ii.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the CDCR's Motion for Summary Judgment in its entirety.  The clerk of the Court is directed to enter judgment in favor of the State of California, Department of Corrections and Rehabilitation and against Plaintiff Spencer Peterson, III.  The clerk is directed to close this case.

IT IS SO ORDERED.

Dated:    **May 4, 2012**                           **/s/ Barbara A. McAuliffe**
UNITED STATES MAGISTRATE JUDGE